IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RANDY STARK,

                Plaintiff,                      OPINION & ORDER

  v.

                                                      14-cv-379-wmc

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                Defendant.

---

Plaintiff Randy Stark seeks judicial review of a decision by the Commissioner of the Social Security Administration denying his application for Social Security Disability Insurance Benefits and Supplemental Security Income. Stark contends that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence because the ALJ: (1) failed to afford sufficient weight to the statement of Stark's treating physician; and (2) failed to provide a complete hypothetical question to the Vocational Expert ("VE"). The court agrees that the ALJ's approach to the treating physician's opinion requires remand and will grant Stark's motion.

BACKGROUND[1]

**I. Procedural History**

On December 19, 2012, ALJ Thomas J. Sanzi issued a decision denying Stark's request for disability insurance benefits. (AR 19-32.) Stark filed a petition for review on February 5, 2013. (*Id.* at 14.) The Appeals Council denied the request for review on March 28, 2014, making the ALJ's decision the final determination of the Commissioner. (*Id.* at

---

[1] Some citations in this Opinion and Order are drawn from the Administrative Record ("AR"). (Dkt. ##7, 7-1.)

1.) On May 23, 2014, Stark filed a timely complaint for judicial review in this court pursuant to 42 U.S.C. § 405(g).

**II. Medical Evidence**

Stark relates his medical history in some detail in his opening brief, and so the court need not repeat it all here. (*See* Pl.'s Am. Br. (dkt. #16) 1-11.)[2] Since 2010, Stark has suffered from several impairments, both physical and mental, that have limited his daily activities and occupational capabilities. He does not challenge the ALJ's findings related to his alleged physical disabilities, and so this opinion focuses primarily on record evidence related to his mental limitations.

Dr. Carmen Scudiero is Stark's treating physician. On February 23, 2010, Dr. Scudiero noted that Stark had chronic pain syndrome, chronic low back pain, dyslipidemia, gout, panic disorder and depression. (AR 318.) At that time, Dr. Scudiero noted that Stark was in "good spirits" and "on an even keel." (*Id.*) Following some new difficulty with leg pain and a motor vehicle accident, both incidents for which Dr. Scudiero saw Stark, Stark's mental condition worsened, according to Dr. Scudiero's treatment notes of July 23. (AR 315.) Dr. Scudiero wrote that Stark was "not doing well from a mental health standpoint." While his neck pain was "really gone,"

> His new symptom is marked mood lability. He will be feeling good one second and feeling kind of depressed, but also angry the next. This is causing a problem with his relationship with his roommate.

---

[2] Stark filed an "amended brief in support" of his request for judicial review concurrently with his reply brief. (*See* dkt. #16.) It appears that the amended brief is substantively identical to the original brief in support, but corrects a number of typographical errors that appeared in the original brief.

(*Id.*)  On November 5, Dr. Scudiero noted that Stark's pain was continuing, that he had not worked for the last three weeks due to discomfort, and that Stark "continued to have the sweats." (AR 311.)

On January 12, 2011, Dr. Scudiero noted that while some of Stark's physical pain had improved, Stark was "not doing as well in regard to his depression and panic." (AR 306.)  While Dr. Scudiero's treatment notes of March 28 observed that Stark was "significantly improved" and that his depression was "dramatically improved also" (AR 303), Dr. Scudiero treated Stark on April 13 for "[s]evere depression with suicide attempt and suicidal ideation," noting in part:

> Things have not been going well for Mr. Stark.  The situation is multifactorial.  He has had to go off the Venlafaxine because he could not afford it.  He has been severely stressed at work in his customer service job[.] . . . He took 8 Valium yesterday.  He emptied the whole bottle into his hand, was going to take everything that he had left but took 8 and then stopped at that, hoping that he would fall asleep and die.  He has thought about nothing but suicide for the last 3 days and is very very much worried if he goes home, he is going to do something to kill himself. . . . I am referring him to the Psychiatry Unit to be admitted with suicidal depression.

(AR 302.)  On April 19, Dr. Nancy Charlier at Gundersen Lutheran Hospital, where Stark had been admitted on a direct basis from Dr. Scudiero's office, noted that Stark had complained of "increasing depression" and that he had still been "feeling suicidal" upon his arrival.  (AR 353.)

On April 26, after Stark's discharge from the hospital, treatment notes indicate that Stark reported a longstanding history of depressive symptoms, multiple episodes of depression that could last weeks or months, and suicidal contemplation.  (AR 290.)  He was diagnosed with a "mood disorder not otherwise specified (probably bipolar disorder type

3

II),"  panic disorder without agoraphobia, anxiety disorder and posttraumatic stress disorder symptoms, as well as some other physical conditions.  (AR 292.)  On May 25, 2011, Dr. Scudiero noted that Stark had again been hospitalized for severe depression.  (AR 299.)

On September 14, 2011, Dr. Kelly Clouse noted that Stark had been doing better but was "recently worse with mood and anxiety symptoms" and documented Stark with bipolar disorder, panic disorder without agoraphobia, anxiety disorder, chronic back pain, hypertension, hyperlipidemia, hypothyroid, gout, reflux, irritable bowel, fatty liver, anemia, and a GAF score of 52.  (AR 450.)  On September 19, Dr. Clouse reported that Stark reported moods that were "up and down," erratic sleep, more panic attacks and significant anxiety.  (AR 452.)

On January 19, 2012, Dr. Stephen C. Copps at Gundersen Lutheran saw Stark and recorded his reports of increasing depression and suicidal ideation.  (AR 528.)  The next day, Dr. Kristen Freier noted:  (1) that Stark had voluntarily admitted himself with suicidal ideations of overdose; and (2) he reported "significant problems with mood swings" and "panic symptoms."  (AR 529-30.)  On February 9, 2012, Dr. Pamjai Johnson noted that Stark had depression and anxiety, many suicide attempts, suicidal ideation and severe anxiety problems with panic attacks.  On May 17, Dr. Johnson recorded Stark's reports of poor sleep and worsening anxiety.

**III.  Written Opinions**

Dr. Scudiero filled out a mental residual functional capacity assessment ("MRFCA"), in which he concluded that Stark had marked limitations in the following "Sustained Concentration and Persistence" categories:

4

- The ability to carry out detailed instructions.

- The ability to maintain attention and concentration for extended periods.

- The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

- The ability to sustain an ordinary routine without special supervision.

- The ability to work in coordination with or proximity to others without being distracted by them.

- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(AR 491-92.) Dr. Scudiero also found that Stark had marked limitations in his ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors. (AR 492.)

**IV. Questioning of the Vocational Expert**

At the hearing, the ALJ asked a number of questions of VE William Dingess. The only portion of that questioning relevant to this review are the hypotheticals that the ALJ posed with respect to Stark's mental limitations. After asking a number of questions regarding persons with Stark's age, education level, work experience and physical limitations, the ALJ asked if a person with all of those limitations could perform jobs in the regional or national economy adding the following additional limitations:

- The work must be "limited to simple, routine, and repetitive tasks in a low-stress job, defined as having only occasional decision-making required and only occasional changes in the work setting." (AR 105.)

- There must be "only occasional interaction with the public, and only occasional interaction with coworkers." (AR 106.)

- There must be "only occasional judgment required." (AR 107.)

## V. The ALJ's Decision

On December 19, 2012, the ALJ issued a decision in Stark's case, employing the five-step evaluation process of 20 C.F.R. §§ 404.1520 and 416.920. At step one, he found that Stark met the insured status requirements of the Social Security Act and had not engaged in substantial gainful activity since March 1, 2009, the alleged date of onset of disability. (AR 24.) At step two, he found that Stark had a number of "severe impairments," including: degenerative disc disease of the lumbar spine; obesity; bipolar disorder, type II; panic disorder; and anxiety disorder. (*Id.*) At step three, the ALJ concluded that despite these numerous, "severe impairments," Stark did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, although he found that Stark had moderate limitations in social functioning and in concentration, persistence or pace ("CPP"). (AR 25-26.)

At step four, the ALJ determined that Stark had the residual functional capacity ("RFC") to perform light work, except that (1) he should "no more than frequently" stoop and crouch, and (2) his work should require "no more than occasional" use of far acuity

vision. (*Id.* at 27.) The ALJ further found that Stark had the mental residual functional capacity to perform work involving simple, routine and repetitive tasks, in a "low-stress job," which he defined as having only: occasional decision-making; occasional changes in the work setting required; occasional interaction with the public; and occasional exercise of judgment. (*Id.*) In arriving at this RFC, the ALJ acknowledged giving some weight to the state agency, non-examining psychological consultants, but giving little weight to the opinion of Stark's treating physician, Dr. Scudiero.

> Dr. Scudiero opined that the claimant has no limitations in understanding and memory, marked limitations in concentration and persistence, marked limitation in social interaction, and moderate limitation in adaption. Dr. Scudiero does not provide any explanation for [his] findings in [his] opinion. Furthermore, I note that [his] opinions in terms of the claimant's limitations related to understanding, memory, concentration, and persistence are inconsistent with the results of treating source mental status examinations[,] which reveal that the claimant demonstrated average cognition, good insight, good judgment, and intact memory.[3]

(AR 30.)

The ALJ also recognized that he had not accommodated all of Stark's alleged symptoms and limitations, but explained that the objective evidence of record "does not provide support for the extent of disabling symptoms and limitations alleged." (*Id.*) Based on this assessment of Stark's residual functional capacity and the testimony of the VE, the ALJ concluded that Stark was unable to perform his past relevant work as a purchasing agent. Finally, at step five, the ALJ found that jobs existed in significant numbers in the

---

[3] Inexplicably, the ALJ repeatedly sued the possessive "her" instead of "his" when referring to Dr. Scudiero, which has been corrected in the text above.

national economy that Stark could perform, based on the VE's responses to his hypothetical questions.  (AR 31.)  Accordingly, he found Stark was not disabled.

## OPINION

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive," so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision.  *Id.* (citing *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992)).  Rather, "the court must conduct a 'critical review of the evidence' before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or 'is so poorly articulated as to prevent meaningful review.'" *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).  To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).  At least with respect to the ALJ's unexplained failure to defer to the opinions of Stark's treating physicians, the opinion falls short.

8

I. **Rejection of Treating Physician's Opinion**

Stark first argues that the ALJ erred in failing to give Dr. Scudiero's opinion sufficient weight and in failing to apply the factors of 20 C.F.R. § 404.1527(c) in weighing his opinion. In *Jelinek v. Astrue*, 662 F.3d 805 (7th Cir. 2011), the Seventh Circuit set forth the standards an ALJ must follow in evaluating the weight to be given to a treating source. "A treating physician's opinion that is consistent with the record is generally entitled to 'controlling weight.'" *Id.* at 811 (quoting then 20 C.F.R. § 404.1527(d)(2) (2011)[4]; *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010)). An ALJ who rejects a treating physician's opinion "must provide a sound explanation for the rejection." *Id.* Furthermore, the ALJ must also decide what weight to give the opinion by applying the factors now enumerated in 20 C.F.R. § 404.1527(c). *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010); *see also Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing ALJ for saying "nothing regarding this required checklist of factors").

Here, the ALJ plainly did *not* afford Dr. Scudiero's opinions controlling weight, which required him to offer a "sound explanation" for his decision to reject those opinions. He briefly articulated two reasons: (1) Dr. Scudiero provided no explanation for his findings; and (2) Dr. Scudiero's opinion was inconsistent with the result of treating source mental examinations revealing average cognition, good insight, good judgment and intact memory. (AR 30 (citing Ex. 22F/25-26, 33).) Stark argues, and the court agrees, that neither of these perfunctory statements constitutes a "sound explanation" for the ALJ's decision to reject Dr. Scudiero's opinion.

---

[4] Formerly, the factors an ALJ had to consider in evaluating the weight to give an opinion appeared in 20 C.F.R. § 404.1527(d)(2). That section has since been renumbered 20 C.F.R. § 404.1527(c), and the court will refer to it as such throughout this opinion.

9

The Commissioner argues that the first reason suffices to provide a "sound explanation" for the ALJ's decision because Dr. Scudiero left blank the third section of the MRFCA form, in which he was asked to explain his summary conclusions from the checklist.  (*See* AR 493.)  On this point, the Commissioner is correct, at least insofar as a check-box form *by itself* could be "weak evidence."  *Larson*, 615 F.3d at 751.  The Seventh Circuit has noted, however, that "the form takes on greater significance when it is supported by medical records." *Id.*

Here, as Stark points out, the record is replete with medical records that support Dr. Scudiero's MRFCA conclusions.  Dr. Scudiero saw Stark repeatedly over the course of his treatment and noted his severe depression, suicidal ideation and suicide attempts, job stress, anxiety and panic on numerous occasions.  The ALJ failed to account for *any* of these records in ruling that Dr. Scudiero had not explained his findings.  *Cf. id.* ("Here, there is a long record of treatment by Dr. Rhoades that supports his notations on the form.").

With respect to the ALJ's second reason for rejecting Dr. Scudiero's opinion, Stark concedes that inconsistency with other evidence in the record can constitute a good reason to reject a treating source opinion.  *See Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (noting that "once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight").  However, Stark also accurately notes that the ALJ ignored the evidence *supporting* Dr. Scudiero's opinions, including copious notes detailing Stark's worsening depression, severe anxiety and poor sleep.  "An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'"  *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (citing *Clifford*, 227 F.3d at 871; *Books v. Chater*, 91 F.3d 972, 979 (7th Cir.

1996)).  Therefore, the ALJ erred by impermissibly cherry-picking the evidence by relying solely on the relatively positive mental examinations and ignoring evidence in the record unfavorable to his conclusion.  *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000).  Thus, the second justification for rejecting Dr. Scudiero's opinion likewise fails, meaning that the ALJ failed to provide the "sound explanation" that the treating source rule requires.

Furthermore, Stark is correct that after declining to afford Dr. Scudiero's opinion controlling weight, the ALJ also failed to consider how much weight to give that opinion by employing all of the § 404.1527(c) factors, which is itself an independent basis for remand. *See, e.g.*, *Campbell*, 627 F.3d at 308 (reversing an ALJ even when her "decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927 [but] does not *explicitly address the checklist of factors* as applied to the medical opinion evidence") (emphasis added).  Section 404.1527(c) requires that an ALJ evaluate a physician's opinion by considering: "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion." *Larson*, 615 F.3d at 751 (citations omitted).

Here, the Commissioner concedes that the ALJ did not evaluate the length of the treatment relationship between Dr. Scudiero and Stark, but argues that Stark failed to explain why this factor supports Dr. Scudiero's opinions.  It is readily apparent, however, that a longer treating relationship supports giving an opinion greater weight.  *See, e.g., id.* ("These factors support Dr. Rhoades: he had treated Larson for several years on a monthly basis[.]");

Additionally, Stark argues, and the court agrees, that the ALJ failed to consider the consistency of Dr. Scudiero's opinion with the record.  The Commissioner objects that the

11

record also includes treatment notes that are *inconsistent* with Dr. Scudiero's ultimate MRFCA opinion, but this does not excuse the ALJ's failure to consider any of the evidence *consistent* with that opinion. *See Myles*, 582 F.3d at 678 ("It is not enough for the ALJ to address mere portions of a doctor's report."); *Zurawski*, 245 F.3d at 888 ("It is worth repeating that 'an ALJ may not ignore an entire line of evidence that is contrary to her findings,' *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999)[.]"). The ALJ's conclusory finding of inconsistency, based on a selective review of the record and lacking an explicit discussion of the § 404.1527(c) factors, cannot support his decision to afford little weight to Dr. Scudiero's opinion.[5]

The above discussion provides several legitimate reasons for the ALJ to consider affording Dr. Scudiero's opinion greater weight on remand. Of course, the court does not intend to suggest that the ALJ *must* ultimately give Dr. Scudiero's opinion controlling weight; that determination is best left for the ALJ. *See Clifford*, 227 F.3d at 869 (reviewing court does not reweigh the evidence or resolve conflicts). Whatever the outcome, however, the ALJ must *properly* explain his decision by using the framework set forth in § 404.1527(c) and addressing all relevant evidence, not merely selective portions of Dr. Scudiero's treatment notes. His failure to do so in the proceedings below requires that this court remand for further proceedings.

---

[5] The Commissioner also cites to the records that are ostensibly inconsistent with Dr. Scudiero's opinions on the MRFCA form, including the GAF score of 52 and the notes indicating that Stark's depression was "actually doing a lot better in some ways." This attempt to rehabilitate the ALJ's decision also fails to the extent that the ALJ himself apparently did not rely on those records in rejecting Dr. Scudiero's opinion, which violates the principle of *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943). *E.g.*, *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010).

## II. Hypothetical Question

Because the court has found that the ALJ's treatment of Dr. Scudiero's opinion requires remand, it need not reach the question of whether the ALJ's hypothetical to the vocational expert properly took into account Stark's CPP limitations.  In the interest of providing some limited guidance on remand, however, the court briefly notes that the Seventh Circuit has held repeatedly that in most cases, "the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations[.]"  *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620-21 (7th Cir. 2010).  This means, for example, that a hypothetical confining the claimant to simple, routine tasks and limited interactions with others does not adequately capture limitations in concentration, persistence and pace.  *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014).

Here, the ALJ found at step three that Stark had moderate difficulties in regard to concentration, persistence or pace (AR 26, 29) and gave some weight to the opinion of the State Agency physician, who likewise found that Stark had moderate limitations with respect to the ability to carry out detailed instructions, maintain attention and concentration for extended periods, make simple work-related decisions and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number of breaks  (*id.* at 469-70).  However, it is not clear that the ALJ's hypothetical accounted for any of these CPP-related restrictions, though the court need not and does not reach that question.  On remand, the ALJ should be sure to pose a complete hypothetical to the VE that expressly accounts for any limitations Stark has with regard to CPP.

13

ORDER

IT IS ORDERED that the decision of the Commissioner is REVERSED and the case is REMANDED to the commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 31st day of March, 2016.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge